UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA L. F.[1],<br><br>            Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration,<br><br>            Defendant. | Case No.  3:22-cv-00201-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff Joshua F. brings this action under the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Security (Commissioner).  The Commissioner denied Plaintiff's application for Disability Insurance Benefits and Social Security Income (SSI) under Title II of the Act. 42 U.S.C. § 401 *et seq.*  Following the Court's consideration of the Complaint (Dkt. 1), [2] the administrative record and the parties' submissions, and for the reasons that follow, the decision of the Commissioner will be reversed and remanded.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] As of December 1, 2022, the Federal Rules of Civil Procedure were amended to include Supplemental Rules for Social Security Review Actions under 42 U.S.C. § 405(g).  As such, the Court adopts the terms "Complaint," "Plaintiff," and "Defendant," in lieu of the former terminology (i.e., "Petition," "Petitioner," and "Respondent").

**MEMORANDUM DECISION AND ORDER - 1**

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."  *Martinez v. Heckler*, 907 F.2d 771, 772 (9th Cir. 1986).  "Where the evidence as a whole can support either a grant or denial, [the court] may not substitute [its] judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d. 625, 630 (9th Cir. 2007) (quotation omitted).

# BACKGROUND

## I.    Plaintiff's Application

Plaintiff alleges disability based on his chronic cluster headaches, depression, and anxiety. AR 373.³ At the time of his alleged onset date of March 13, 2019, Plaintiff was 44 years of age. AR 27, 37. He has a limited education and past relevant work experience as a construction worker. AR 36-37.

Plaintiff protectively applied for Disability Insurance Benefits ("DIB") on August 27, 2019, alleging an onset date of March 13, 2019. AR 24. His application was denied initially on December 3, 2019, and on reconsideration on April 22, 2020. *Id.* Plaintiff next requested a hearing, which was conducted on February 17, 2021, before Administrative Law Judge ("ALJ") Stewart Stallings. AR 24, 38. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Steven Floyd, also testified. AR 54-78. On April 29, 2021, the ALJ issued a decision denying Plaintiff's application. AR 24-38. Plaintiff requested Appeals Council review, which was denied on March 9, 2022. AR 1-9. Plaintiff timely sought review before the Court.

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected… to last

---

³ Citations to "AR" are to the Administrative Record. (Dkt. 13.)

for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 414.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical and mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges as severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations their impairment impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

**MEMORANDUM DECISION AND ORDER - 4**

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, they are not disabled; if they cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.     The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his alleged onset date of March 13, 2019. AR 27. Therefore, the ALJ continued with the sequential process. *Id.*

At step two, the ALJ determined that Plaintiff has the following severe impairments: "headaches, anxiety, depression, right inguinal hernia, and opioid dependence and cannabis use." AR 27.

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. AR 27-29. The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff:

> [H]as the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that he can lift/carry/push/pull 20 pounds occasionally, and less than 10 pounds frequently. Except, he would need a sit/stand option which is defined as changing from a seated position or standing position, or vice versa, every 30 minutes or so for about five minutes while remaining at the work station (approximation, not a strict on-

**MEMORANDUM DECISION AND ORDER - 5**

>the-clock situation, and sit or stand at will is also okay). He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally stoop, crouch, kneel, and crawl. He should avoid exposure to extreme cold, extreme heat, wetness, and humidity. He can have occasional exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas. He should have no exposure to moving or dangerous machinery or unprotected heights. He would be limited to simple, routine, repetitive tasks with reasoning levels 1 or 2; low stress jobs (with no production pace, conveyor belt, non-worker controlled pace type work) in a predictable work environment. He can perform occasional simple workplace changes. He can have superficial and brief interaction with the public and co-workers. He can have occasional interactions with supervisors.

AR 29.

At step four, the ALJ found that Plaintiff cannot perform his past relevant work. AR 36.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs exist in the national economy that Plaintiff can perform, including work as a router, production assembler, and agricultural sorter. AR 37. The ALJ concluded Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends that the ALJ committed four errors. First, Plaintiff argues that the ALJ erred at step three by inadequately analyzing Plaintiff's cluster headaches under Listing 11.02. (Dkt. 13 at 6-10.) Next, Plaintiff contends that the ALJ improperly rejected medical opinions under the "supportability" and "consistency" standard. (Dkt. 13 at 10-13.) Plaintiff also contends that the ALJ improperly rejected Plaintiff's subjective symptom testimony without clear and convincing reasons for doing so. (Dkt.

**MEMORANDUM DECISION AND ORDER - 6**

13 at 14-17.) Finally, Plaintiff argues that the ALJ failed to reconcile an inconsistency between the vocational expert's testimony and the *Dictionary of Occupational Titles*. (Dkt. 13 at 17-19.) Despite Defendant's arguments to the contrary, the Court finds that the ALJ committed legal error. As more fully explained below, the Court will identify the ALJ's material legal errors and will reverse the decision and remand this matter for further proceedings.

### I. The ALJ erred in evaluating Plaintiff's cluster headaches at Step Three of the sequential process.

#### a. Legal Standards

The ALJ follows a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); 20 C.F.R. § 404.1594. As relevant here, where a claimant is found to have at least one severe impairment at step two of the sequential process, *see* 20 C.F.R. § 404.1520(a)(4)(ii), step three requires the ALJ to evaluate whether the claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, App. 1. *See* C.F.R. §§ 404.1520(a)(4)(iii), and (d); 20 C.F.R. § 404.1525; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to have "an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).

"To *meet* a listed impairment, a claimant must establish that they meet each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs, and laboratory findings 'at least in severity and duration' to the characteristics of a relevant listed impairment, or if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Id.* (emphasis in original); 20 C.F.R. § 404.1526(a).

The claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his or her impairments meet or equal a particular listing. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how their combined impairments equal a listing. *See Lewis*, 236 F.3d at 514. Although it is the claimant's burden at step three, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do nor meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* at 512. However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if the ALJ adequately summarizes and evaluates the evidence. *Id.*; *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 8**

b. <u>Analysis</u>

Here, the ALJ found Plaintiff's headaches, anxiety, depression, right inguinal hernia, and opioid dependence and cannabis use were severe impairments at step two. AR 29.  At step three, the ALJ concluded that Plaintiff's migraines did not meet or equal a listed impairment, stating that "record fail[ed] to demonstrate that [Plaintiff] suffer[ed] from dyscognitive seizures that occur[red] at least once a week for at least three consecutive months or once every two weeks for at least three consecutive months."  AR 29.

Plaintiff contends that his migraine headache impairment equals Listing 11.02D. (Dkt. 13 at 7.) [4]  Notably, migraine headaches are not a specific listed impairment.  If an impairment is not described in the "Listing of Impairments," the regulations require that the ALJ "compare [a claimant's] findings with those for closely analogous listed impairments."  20 C.F.R. § 416.926(b)(2).  The Social Security Administration identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders. Migraine headaches are included in such disorders and may, alone or in combination with another impairment, medically equal a recognized Listing.  SSR 19-4p: *Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders*, available at 2019 WL

---

[4] Throughout the briefing, as well as the medical record, Plaintiff's impairment is referred to as both "cluster headaches" and "migraine headaches."  Both conditions fall under the category of "primary headache disorders."  SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, available at 2019 WL 4169635 (Aug. 26, 2019).  Considering Listing 11.02 (Epilepsy) is the most closely analogous listed impairment to primary headache disorder, the step three medical equivalence analysis for cluster headaches and migraine headaches is the same.  For clarity and uniformity, the Court refers to Plaintiff's impairment as "migraine headaches" in this decision.

**MEMORANDUM DECISION AND ORDER - 9**

4169635 (Aug. 26, 2019).  Because there is no dispute that the ALJ considered Plaintiff's migraine headaches alongside Listing 11.02D, the precise issue before the Court is whether the ALJ adequately did so.

Listing 11.02D requires the existence of "dyscognitive seizures, occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment," and a "marked limitation" in one of the following: (i) physical functioning; (ii) understanding, remembering, or applying information; (iii) interacting with others; (iv) concentrating, persisting, or maintaining pace; or (v) adapting or managing oneself.  20 C.F.R. Part 404, Subpart. P, App. 1 § 11.02D.  Here, the ALJ found that Plaintiff's impairment failed to equal Listing 11.02D simply because the evidence in the record failed to demonstrate that Plaintiff suffered from dyscognitive seizures.  AR 27.)  However, this finding is "too formulaic and misses the point."  *See Jeffrey N. v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-00433-REP, 2021 WL 4497144, at *6 (D. Idaho Sept. 30, 2021).

Because Plaintiff does not claim that he is disabled due to epilepsy, the absence of evidence in the record demonstrating that Plaintiff suffered from dyscognitive seizures is irrelevant.  Rather, when migraine headaches are not a specific listed impairment, the ALJ is required to "assess whether [Plaintiff's] migraines are equal in severity and duration to the criteria in Listing 11.02D—not that they are one in the same."  *Jeffrey N.*, 2021 WL 4497144, at *6.  Specifically, the Social Security Administration's policy interpretation SSR 19-4p provides:

**MEMORANDUM DECISION AND ORDER - 10**

> Paragraph D of Listing 11.02 requires dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, available at 2019 WL 4169635, at *7.  Boiled down, the Court has identified three main elements required by Listing 11.02: "(1) a detailed documentation of pain and resultant symptoms; (2) occurrence of the impairment at least twice a week during a period of three consecutive months of prescribed treatment' and (3) that the impairment significantly alters a claimant's daily activity."  SSR 19-4p, available at 2019 WL 4169635, at *7; *see also Rader v. Comm'r of Soc. Sec.*, 2:17-cv-00131-CWD, 2018 WL 4087988, at *6 (D. Idaho Aug. 17, 2018).

Limiting the entire step three analysis to only whether Plaintiff experienced dyscognitive seizures is a "misguided approach." *See Jeffrey N.*, 2021 WL 4497144, at *7.  Rather, because the ALJ was required to determine medical equivalence for migraine headaches at step three, the ALJ erred by fully examining Plaintiff's history of migraine headaches, including duration, frequency, treatment and any side effects, and resulting limitations.

### 1.     *Evidence of Plaintiff's Migraine Headaches*

Here, Plaintiff points to medical records describing Plaintiff's headaches, their frequency, his attempts to seek relief, and the impact of the headaches on Plaintiff's

**MEMORANDUM DECISION AND ORDER - 11**

activities. First, with regard to frequency, relief, and impact, Plaintiff reported to Nurse Practitioner ("NP") Sandra Schorzman, on June 18, 2019, that "the only medication that seems to help [was] the sumatriptan and he ha[d] the cluster [headaches] almost every day during the spring cycle. Admittedly he report[ed] that during the winter he [was] better…He [was] depressed, discouraged and still experiencing pain." AR 520. NP Schorzman prescribed sumatriptan injections coupled with high flow oxygen, Norco, and metoprolol succinate for the headaches. AR 522. Plaintiff was instructed to take only one sumatriptan per day and no more than nine per month. AR 522.

The medical record also indicated that Plaintiff established care with and first reported severe cluster headaches to Nurse Practitioner ("NP") Thad Giblette on May 26, 2020. AR 561. The treatment notes from that visit reflect Plaintiff reported longstanding, poorly controlled headaches and migraines, as well as longstanding anxiety, fatigue and a dental abscess. AR 562. NP Giblette noted that Plaintiff had "tried quite a few medications both in preventative and abortive therapy. Triptans seem[ed] to help somewhat but [did] not address the frequency." AR 564. NP Giblette prescribed antibiotics and explained that the dental issues could have contributed to the headaches. AR 564. He also prescribed topiramate to Plaintiff's headache medication regimen. AR 564. Plaintiff reported that any relief experienced from the various antibiotics was only temporary. AR 554. On October 23, 2020, Plaintiff reported that the sumatriptan injections worked well for his headaches, but he needed more than nine injections per

**MEMORANDUM DECISION AND ORDER - 12**

month. AR 542. NP Giblette increased the sumatriptan allowance and added propranolol for headache treatment. AR 544.

Plaintiff also points to evidence in the medical record demonstrating that Plaintiff's headaches resulted in marked limitation in the area of concentrating, persisting, or maintaining pace. At a psychiatric consultative examination by Rebecca Alexander, Ph.D., on December 2, 2019, Plaintiff reported that he suffered migraine headaches almost daily, the headaches lasted thirty minutes to three hours, and he was "scared to go places because of the [migraine] headaches." AR 529. Dr. Alexander also noted that Plaintiff's "anxiety/panic began a couple of years [ago] due to fear of having a headache… He report[ed] he [was] anxious when leaving the house due to fear of a headache; this [was] eased by having a shot of Sumatriptan with him." AR 532. Further, Dr. Alexander noted that Plaintiff was "unable to function while having headaches, and that, without his headaches, Plaintiff was "able to cook and do laundry and household chores." AR 534.

Dr. Alexander also opined that Plaintiff's "ability to interact appropriately in the workplace and socially, manage stress, frustration, and irritability, and fulfill job expectation [was] moderately to markedly impaired." AR 534. Further, on November 16, 2020, Plaintiff established care with Nurse Practitioner ("NP") Stephanie Carpenter for behavioral health. AR 536. Plaintiff reported that the migraine headache added to his depression and anxiety. AR 536. He was afraid to go out in public due to the headaches, struggled to get along with others, did not sleep well, had a poor appetite, and often had

suicidal ideations due to pain. AR 537-38. He was diagnosed with "mood disorder with major depressive like episode due to general medical condition." AR 540.

The ALJ erred in properly considering this evidence at the step three analysis. At the very least, the records from June 2019 through November 2020, establish Plaintiff was consistently treated with medication during the relevant time for a period of more than three months with no improvement. The same records also demonstrate that Plaintiff tried multiple medications, including sumatriptan and propranolol, and had no long-lasting positive response. AR 544-45, 554, 564. There is also evidence that Plaintiff's migraines significantly interfered with his daily life activities. In the face of all of this medical evidence, the Court finds the ALJ's failure to discuss whether Plaintiff's migraine headaches met or equaled Listing 11.02D constituted legal error.

## II. Additional Assignments of Error

Plaintiff also challenges the ALJ's: consideration of the medical opinion evidence, evaluation of Plaintiff's symptom statements, and RFC assessment. (Dkt. 13.) The step three evaluation of Plaintiff's migraine headaches and the RFC assessment are dependent on the ALJ's proper evaluation of the medical evidence and Plaintiff's subjective symptom statements. On remand, therefore, the ALJ must reconsider the medical evidence, Plaintiff's symptom testimony, and the other evidence in the record regarding his migraine headaches. Further, the ALJ's reconsideration of the step three findings may be dispositive without regard to whether Plaintiff functionally meets the listing. *Lewis*, 236 F.3d at 512 (citing 20 C.F.R. § 404.1520(d)). Therefore, the Court will not

address Plaintiff's remaining challenges to the ALJ's decision here. *See Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990) ("Because we remand for reconsideration at step three, we do not reach the other arguments raised.").

### III.    Remand

A reviewing court has the discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for further proceedings depends largely on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis, the Court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Even if all the requisites are met, however, the Court still may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained

how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal error. As discussed above, the ALJ erred in his finding that Plaintiff's migraine headaches did not equal a listed impairment at step three. Thus, the ALJ also failed in incorporating the opinions into the RFC.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate award of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the Court finds the record sufficiently ambiguous, making remand for an immediate award of benefits inappropriate. On remand, if the ALJ determines that Plaintiff's migraine headaches meet or medically equal Listing 11.02D, Plaintiff is presumed disabled and benefits should be awarded. If the ALJ concludes the medical evidence is insufficient to raise a presumption of disability at step three, the ALJ should proceed to steps four and five of the sequential evaluation. The parties may then freely take up the remaining issues and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court will reverse and remand the Commissioner's decision.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1) The decision of the Commissioner of Social Security is REVERSED.

2) This action shall be REMANDED to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: June 7, 2023

_____
Honorable Candy W. Dale
United States Magistrate Judge